In the Matter of KRAMER BROTHERS FOUNDRY, Debtor.

**KRAMER BROTHERS FOUNDRY, Plaintiff,**

v.

**CUMBERLAND VALLEY FOUNDRY, INCORPORATED, Defendant.**

Bankruptcy No. 3–82–02575.
Adv. No. 3–83–0480.

United States Bankruptcy Court, S.D. Ohio, W.D.

March 14, 1985.

William R. Coen, William R. Coen, Co. L.P.A., Coen, Breidenbach, Johnson & Hansen, Dayton, Ohio, for plaintiff.

John M. Slavens, Hollencamp & Hollencamp, Dayton, Ohio, for defendant.

## DECISION

ELLIS W. KERR, Bankruptcy Judge.

Because of the numerous pleadings filed in this case and the great number of hearings this Court considers it best to start this Decision with a resume of the pleadings filed and a resume of the various hearings.

## PLEADINGS

This Adversary Proceeding was instituted by the filing by Attorney Coen on behalf of the Plaintiff, what is designated "Complaint To Turn Over Assets; For Attorney Fees And Money Judgment" alleging Plaintiff entered into an oral lease with Defendant for certain equipment to be used by Defendant in the operation of a foundry in London, Kentucky which, at that time, was contemplated would do foundry castings for the Plaintiff on a wholesale basis. The equipment is listed in part on an exhibit attached as that designated as Exhibit A. The complaint also alleges that Plaintiff left with the Defendant certain patterns to be used for the production of certain castings which were patterns from the customers of the Plaintiff and were entrusted to the Plaintiff by the customers; that the patterns are not the subject of any lease and are merely in the possession of the Defendant by reason of the fact that Plaintiff entrusted the patterns to the Defendant for the purpose of making the castings. Plaintiff alleges that demand has been made for the return of the equipment and the patterns, but the Defendant failed and/or refused to turn over the equipment and the patterns; that it is essential that the equipment and patterns be returned without delay to the Plaintiff in order that they may produce or have produced castings for customers who have placed orders with the Plaintiff; that time is of the es-

sence in that certain production dates have been made a part of the purchase orders and it is essential that the orders be filled without delay or both the customers and the Plaintiff would be damaged and suffer irreparable harm.

The complaint also alleges that the Plaintiff incurred obligations for attorney fees and long distance telephone charges in various attempts to retrieve the equipment and patterns and that Plaintiff should be entitled to judgment for the reasonable value of the attorney fees incurred; that Defendant is obligated in the amount of $210.00 per month until June 1, 1983 and $630.00 per month thereafter until the date the equipment is returned, for lease rentals unpaid by the Defendant.

The prayer of the complaint is for the Court to order the Defendant to forthwith turn over to the Plaintiff all of the equipment and patterns in good condition; for a determination of the rental obligation and judgment for said amount; for reasonable attorney fees and for equitable relief.

On August 22, 1983 Defendant filed Motion to Vacate "Order." The Motion sought to terminate an Order which had been filed August 17, 1983 requiring Defendant to turn over motor vehicles and equipment. Defendant contends that the Order was prematurely entered prior to answer time after having been incorrectly assigned for a Preliminary Hearing. As will be later shown the Order about which the complaint had been made had not even been docketed at the time of the docketing of the Defendant's Motion to Vacate the Order.

On September 6, 1983 Attorney Slavens for the Defendant filed what is designated "Answer, Counterclaim and Third Party Complaint." Included in the allegations was the complaint that the Plaintiff had failed to join all parties necessary; that the complaint failed to state a cause of action upon which relief could be granted and that the items in question had been sold to Defendant for good and valuable consideration. Counterclaims included the following; That Defendant had provided certain work, goods, materials and services worth $4,051.86 to the Plaintiff which owed the Defendant that amount. As a second cause of action and third party complaint it is alleged that in September 1982 Plaintiff and a third party Defendant, Jack Somers, sold to Incorporators of the Defendant a Linberg Induction Melting Furnace with Pillar Electronic Control Cabinet, Sand Mullers, Core Mixers, Squeezers, Screen Erator for Muller, ladle head crane, air grinders, rammers, hand ladles and miscellaneous tools in consideration of $40,000.00, promises and agreements; that of the $40,-000.00, $10,000.00 had been paid to Jack Somers September 3, 1982 and the balance was paid January, 1983; that as a part of the sale transaction Plaintiff and Somers promised and agreed to pay Defendant and its Incorporators one-half of all operating expenses and costs incurred in moving, establishing, incorporating, operating, and insuring the new furnace until the outstanding obligation on the furnace due the First National Bank, Dayton, Ohio was paid; that Defendant and its incorporators performed their terms of the agreement and incurred expenses of $28,936.00; that Defendant had ratified all of the acts of its incorporators and in incurring the above mentioned operating expenses relied upon the representations of the Plaintiff and third party Defendant, Jack Somers and that Plaintiff and Somers owe Defendant on its counterclaim, second cause of action, the sum of $14,468.00. Defendant prayed that the complaint be dismissed in its entirety or in the alternative, if Defendant be required to turn over any assets to the Plaintiff that the interest of the Defendant be adequately protected. Defendant asked for judgment against Plaintiff in the amount of $4,081.86 plus interest and costs and for judgment on the Counterclaim, Second Cause of Action and its Third Party Complaint against Plaintiff and Somers in the sum of $14,468.00 plus interest and cost.

On October 4, 1983, Plaintiff filed a Motion to Dismiss the Answer and counter-

claim for the reason that it was filed without authority of the Defendant.

On October the 18th, Defendant filed a response and Objection to the Motion to Dismiss the Answer and counterclaim alleging that the major stockholder and President of the Defendant was unaware that a suit was pending against the corporation at the time he spoke with the attorney for the Plaintiff and that the actions on behalf of the Defendant had been ratified by the officers and directors of the Defendant. In support the Defendant filed an affidavit of one Delford McKnight which states that McKnight owns 51% of the stock of the Defendant; that he is President of the Defendant corporation and is a member of the Board of Directors and that one James Jones owns 49% of the stock. The affidavit states that the Board of Directors of the Defendant ratified all of the acts and pleadings taken on behalf of the Corporation by James Jones and Attorney Slavens and that the Defendant does have defenses to the action brought by the Plaintiff and has claims to assert against the Plaintiff.

On November 23, 1983 Attorney Coen, on behalf of the Plaintiff and Third Party Defendant Somers filed a pleading which denies paragraphs five and six of what Defendant designated the first cause of action of a counterclaim; denies paragraphs 7 thru 13 of the Defendant's counterclaim denominated second cause of action and third party complaint; alleges that the counterclaim fails to state a cause of action and that the counterclaim is barred by the applicable provisions of the uniform commercial code of Ohio relating to documents required to be in writing.

On December 5, 1983 Defendant filed what is designated Motion to Compel Answer or to Order Sanction. It seeks an Order requiring Plaintiff to provide the Defendant with answers to questions proposed during a deposition. In the alternative the request is made for an Order barring the Plaintiff's defense of "rejection." The memo attached to the Motion refers to a deposition in which Defendant sought information; that some of the information requested concerned companies who allegedly rejected goods delivered and that refusal to disclose the information is based on a false claim trade secret.

## HEARINGS SET

*9:45 A.M., August 11, 1983* Preliminary Hearing by Order dated July 28, 1983. Present were Coen, Attorney for the Plaintiff, Mr. Somers, President of Plaintiff and Mrs. Somers. It was agreed an Order would be submitted. An Agreed Order was submitted and approved September 12, 1983. It provided for release by the Defendant to the Plaintiff, of two Ford Stake and Pick-up trucks, certain patterns and other items.

*1:30 P.M., October 13, 1983* A pre-trial on Motion by Defendant to vacate a Default Order which had been submitted, but which had not been docketed prior to the Motion to vacate which had been docketed. Only Attorney Slavens appeared for Defendant. The matter was continued to be heard October 19th which had been set for trial, but this trial date was cancelled—a new trial date to be set.

*1:30 P.M., October 19, 1983* Hearing on Motion to which reference was made in preceding paragraph. Present were attorneys for each party and Somers of the Plaintiff. Motion overruled and pending matters were continued to 9:30 A.M., November 10th for trial or pretrial.

*9:30 A.M., November 10, 1983* There was another Pre-Trial Hearing at which time trial date was set for 9:30 A.M., January 16, 1984.

*January 16, 1984* The entire day was devoted to trial, but the attorney had underestimated the time which would be required. Not being able to conclude the trial it was continued to 9:30 A.M., March 19, 1984. Again more time was required so the trial was again continued to 9:30 A.M., August 2, 1984 on which date it was concluded.

\*      \*      \*      \*      \*      \*

On August 16, 1984 there was filed "Plaintiff's Post-Trial Brief."

August 30, 1984 was filed "Defendant's Post-Trial Brief."

"Plaintiff's Post-Trial Reply Brief" was filed September 11, 1984.

Because of complications, the great number of items in dispute, the numerous exhibits, and the great extent of and the conflict in testimony the Court chooses to start this opinion first with comments about the property in dispute.

The first paragraph of the complaint alleges that the Plaintiff entered into an oral lease with the Defendant for equipment to be used. That equipment is described in Exhibit A attached to the complaint. This Exhibit A is exactly the same as Plaintiff's Exhibit 6. Among other things, the Plaintiff seeks return of this equipment.

Plaintiff's Exhibit 2 is a Bill of Sale. It is dated January 13, 1983. It is from the Plaintiff to the Defendant. The consideration is $40,000.00. The property described in it is as follows:

Linbergh 1 ton Induction Melting Furnace and Pillar Electronic Control Cabinet including water cooling tower

Sand Muller

Core Mixer

Squeezer

Screenerator for Muller

Ladle and overhead crane

Air Grinders and rammers, hand ladles and miscellaneous tools

Wheel-a-brator

Mold Turner

Much of the dispute is whether the equipment listed in Exhibit A (Plaintiff's Exhibit 6) is the same as or included in the items listed in the Bill of Sale. A copy of Exhibit A (Plaintiff's Exhibit 6) copy is attached as the next page.

EXHIBIT A

KRAMER BROTHERS EQUIPMENT ON THE PREMISES OF
CUMBERLAND VALLEY FOUNDRY,
LONDON, KENTUCKY

Clearfield Sand Muller
Clark 4000# fork truck
Batch mixer for cores
2 HP motor and air compressor
1966 Ford stake truck
Back chassis rail for truck
Air-powered rammers (1 table and 1 floor)
Air grinders (2)
Core blower unit (yellow) B & P
Squeezer machine
Squeezer flasks and jackets

| 10 × 20 | 12 × 24 | 13 sq. | 16 sq. |
| 14 × 19 | 13 × 21 | 14 sq. | plus others |

Large flasks and jackets
　　All steel flasks 40 × 40 etc.; Pouring jackets; Slip flasks

Patterns: (All patterns with appropriate core boxes)
　　27½ × 27½ square state highways grate
　　Large rectangular pattern for DP&L with flasks (frame and lid)
　　Barbell pattern—6 on
　　KB manhole frame and lid pattern for K 118—cope and drag
　　Tamper　　　　8 × 8　　　　9 × 9　　　　10 × 10　　　　plus core box

Pipe cutting tools
Hand ladle and carrier 150# size

Leeds and Northrup chart recorder and pouring stand for CE determination
Electro-nite immersion pyrometer
Bottom boards for flasks
1982 Ford pick-up truck—white—leased from Stengers Ford

---

For the purpose of clarity and logical order the Court further chooses to proceed with comments as to each of the items listed on Plaintiff's Exhibit 6.

Included in item 6 are items in regard to which there is no dispute because of an Agreed Order of September 12, 1983 these were released by the Defendant to the Plaintiff. These are the fifth, thirteenth and last item listed on Exhibit 6. They are: 1966 Ford Stake Truck, Patterns (including all items described in the listing of the said patterns), and 1982 Ford Pick-Up Truck-White-Leased from Stengers Ford.

## CLEARFIELD SAND MULLER

The first item in Exhibit 6 is Clearfield Sand Muller. The Bill of sale includes a sand muller, but does not describe whether it is or is not a Clearfield. As previously stated, this bill of sale was dated January 13, 1983. Defendant contends that on that date most of the equipment that is at issue in this case was located at London, Kentucky; that on that date the Clearfield Muller with Screenerator were in place and in operation. A "screenerator for Muller" was also one of the items included in the bill of sale. Defendant contends that the screenerator is only operable with the Clearfield Muller and that there is no good reason for the Defendant to purchase a screenerator for a muller and at the same time purchase a Beardsley and Piper Muller which is incompatible with the screenerator purchased.

Plaintiff contends that it was a Beardsley and Piper Muller which was sold to the Defendant.

Somers testified that it was the Beardsley and Piper Muller which the Defendant purchased, but that because it needed repair; that it was taken to a repair shop to be repaired, but Jones picked it up before the repairs were completed and took it to Kentucky; that Jones asked if he could not have the Clearfield Muller until the other one was repaired and the Clearfield was installed on a temporary basis until the other could be repaired.

Somers further testified that in January when he was in Kentucky a Beardsley and Piper Muller was in the yard still awaiting repair.

From the testimony and the evidence the Court must conclude and find as a matter of fact that it was not the Clearfield Muller which the Defendant purchased and which is the property of the Plaintiff and should be returned to the Plaintiff.

## CLARK 400 FORK TRUCK

This is the second item on Exhibit 6. Defendant contends it had been given to Jones to replace equipment which he released to his landlord in Harlan, Kentucky to pay rental arrearage; that it is not included in the bill of sale because it concerns a separate transaction between Jones and Somers. Plaintiff insists that Jones admitted that this truck was the property of the Plaintiff. Somers was definite in his testimony that this truck was part of the leased equipment; that it was used to lift castings; that it was a front loader; that it became leased property when the Defendant did not purchase; that the value had been $6,000.00 to $7,000.00, but as of the date of testimony was only $4,000.00 to $5,000.00. But Jones testified that he "considers" this truck his; that in November of 1982 Somers had told Jones that Jones could have it. Plaintiff insists that Jones had told Plaintiff it could pick up this truck. The brief of the Defendant claims that the testimony indicated this truck is not in good condition and valued at approximately only $5,000.00. Defendant further contends that Somers did not contest the ownership of this truck in January 1983 when it was in London, Kentucky and being used. There is nothing in the testimony or other evidence to indicate there is

any reason for Somers at that time to contest the ownership. His truck was merely part of other equipment being used by the Defendant to do the work that was intended. The affidavit filed by McKnight is specific that there was ratification of all acts and pleadings taken on behalf of the corporation by Jones. The Court finds as a matter of fact that this truck was merely one of many items involved in the dealings between the Plaintiff and the Defendant; that it did not involve a separate transaction between Somers individually and Jones individually; that there was insufficient testimony and evidence to sustain the claim of the Defendant that this truck had been given to Jones to replace equipment which he released to his landlord in Harlan, Kentucky; that whatever problem Jones had with his landlord is not a part of this case; that if this truck were to be considered a part of the property purchased by the Defendant it would have and should have been included in the bill of sale and that, therefore, this truck is property of the Plaintiff and Defendant should return it to the Plaintiff.

### BATCH MIXER FOR CORES

In its Brief the Defendant claims that at the time the bill of sale was signed there were two batch mixers on the property of the Defendant; that one was what was described as a smaller one and the other a larger one; that at the time the bill of sale was signed the smaller one was the one in operation; that the larger one was outside the building and not being used; and that, therefore, the bill of sale referred to the smaller one. In the Brief of the Plaintiff it is stated that the Defendant can have either one it wants. Therefore, the larger of the two batch mixers should be returned by the Defendant to the Plaintiff.

### TWO HP MOTOR AND AIR COMPRESSOR

Defendant in its Brief contends that this was a part of a separate transaction between McKnight and Somers; that Somers in using an air compressor belonging to Mr. McKnight burned up the equipment and that Somers thereafter replaced the one which was destroyed by giving his own to Mr. McKnight. This case does not involve any separate transactions between McKnight and Somers. The issues are those between the Plaintiff and the Defendant. The statement that Mr. Somers in using the compressor burned up the equipment is a statement that is without foundation as far as the testimony in evidence is concerned. It was not Somers who was using the equipment. It was the Defendant which was using the equipment. If any equipment was burned up it would seem to be the obligation of the Defendant to replace it. There was a question as to whether there was more than one air compressor. Jones for the Defendant testified that the Defendant had only one air compressor; that it did not come from the Plaintiff and that it was a five horsepower air compressor. There was not sufficient testimony to refute this. The Court finds that the Plaintiff did not sustain sufficient burden of proof to show that it was entitled to the air compressor in question and the Defendant will not be ordered to give to Plaintiff the air compressor.

### BACK CHASSIS RAIL FOR TRUCK

Neither party seems to attach any importance to this item. There was no testimony on behalf of the Defendant that the Plaintiff was not entitled to this item. The testimony on behalf of the Plaintiff did not clearly establish that the Defendant even had this item. Lack of proper argument about it in the Briefs leaves the Court with just one choice, to wit: If the Defendant has this item it should return it to the Plaintiff.

### AIR–POWERED RAMMERS (1 TABLE AND 1 FLOOR)

Defendant contends that there was no dispute as to these until the complaint was filed. Mr. Jones on behalf of the Defendant testified that he had three rammers all

of which were his and that the bill of sale covers the rammers in dispute. The brief of the Plaintiff contends that additional rammers have been picked up by workmen when transporting the second muller to Kentucky; that this equipment was duplicative and that it is only the second rammer that Plaintiff alleges to be the subject in dispute. On behalf of the Plaintiff Somers testified by describing the rammer, giving the diameter and the length and explained that it was used to pound sand but the Plaintiff failed to sustain the burden of proof that the Defendant had any rammer to which the Plaintiff is entitled.

It should be noted that the bill of sale was not for *a* rammer but is in the plural referring to rammers.

The Court concludes that the Plaintiff is not entitled to the return of any rammer.

### AIR–GRINDERS (2)

The situation as to these is similar to that in regard to the rammers.

Defendant contends that these items were never disputed until the complaint was filed and they are included in the bill of sale. The Plaintiff did not in any way sustain the burden of proving that the grinders are property of the Plaintiff. The bill of sale again uses the plural in referring to "air grinders". Taking into consideration the wording of the bill of sale the Plaintiff had a responsibility to get in writing signed by the Plaintiff and the Defendant an instrument which would indicate that there were grinders in addition to those listed in the bill of sale to which the Plaintiff is entitled.

The Court must conclude that the Defendant does not have any grinders to which the Plaintiff is entitled.

### CORE BLOWER UNIT (YELLOW) B AND P

Defendant contends that on January 13, 1983 the date of the bill of sale, the core blower unit was not at the location of the Defendant; that it arrived later; that it is not on the bill of sale and not on the March, 1983 document listing eight items; that there had been no demand for the return by a virtue of the unspecific letter from the attorney for the Plaintiff. The Plaintiff contends that the Defendant stated it was not going to be used by the Defendant who admitted that it was a property of the Plaintiffs.

Somers testified that Jones took it down to Kentucky and that it at the time of the trial was outside. Jones admitted that the unit was taken to Kentucky and that Somers had told him he could have it if he got it out of the way and that the value was only about $200.00. However, on cross examination Jones admitted that he had informed the Plaintiff that it could pick up this unit.

It is definite that this item was not included in the bill of sale. There was not very much testimony in regard to this item, but from what testimony there was the Court concludes that this is property of the Plaintiff and should be returned to the Plaintiff.

### SQUEEZER MACHINE

There were originally two squeezer machines but neither worked properly. Parts of one were used to repair the other thus making a complete operating squeezer. The Plaintiff in its brief states that it is willing to accept the cannibalized squeezer and make it operable.

A squeezer is included in the bill of sale. The Court finds that this applies to the squeezer that was made operable but that the other squeezer machine should be returned by the Defendant to the Plaintiff.

### SQUEEZER FLASKS AND JACKETS

| 10 × 20 | 12 × 24 | 13 sq. | 16 sq. |
| 14 × 19 | 13 × 21 | 14 sq. | plus others |

Jones testified that sand goes into a flask and forms a pattern and that the jacket keeps the iron from running out. He considers these hand tools. The brief of the Defendant contends that they are hand tools. Defendant's Exhibit 5 was used in examination of witnesses but was not offered in evidence. It is a photo of flasks, jackets and bottom boards. From the testimony and the evidence it seems clear to the Court and the Court finds as follows: These flasks and jackets had been used by the Plaintiff in producing castings for specific customers; that they are not included in the bill of sale; that they are not a part of the property "leased" to the Defendant; that they were merely loaned by the Plaintiff to the Defendant to produce castings for customers; that not only can they not be considered hand tools but must be considered as property of the Plaintiff to be used in regard to production for specific customers and must be returned by the Defendant to the Plaintiff.

## LARGE FLASKS AND JACKETS ALL STEEL FLASKS 40 × 40 ETC.; POURING JACKETS; SLIP FLASKS

The testimony on behalf of both the Plaintiff and the Defendant was not so enlightening as it might have been in distinguishing between squeezer flasks and jackets and the large flasks and jackets. The comments made above about the squeezer flasks and jackets are also applicable as to these items. They are not in the bill of sale. They are not part of property considered "on lease". They were merely on loan from the Plaintiff to the Defendant. The Court finds that these should be returned by the Defendant to the Plaintiff.

## PIPE CUTTING TOOLS

The Plaintiff contends that the pipe cutting tools were borrowed by the Defendant to install a furnace and were to be returned. Defendant at page eight in its brief lists six items among which are pipe cutting tools. The Defendant contends that none of these items were in dispute in

January of 1983 as they are listed in the bill of sale. This is not correct. These items as such are not listed in the bill of sale except the one item of hand ladle. Obviously what the Defendant is trying to contend is that all six of these items are hand tools. The Defendant claims that the March 19, 1983 list is enlightening for what it does not include such as the six items set out in the brief. The brief does not go into detail as to the March 1983 list. If it is the list which is Defendant's Exhibit 19 the following comments would be appropriate.

Defendant's Exhibit 19 is "To: Cumberland Valley Foundry". It lists eight items loaned to Defendant, the property of Plaintiff, returnable on demand and if kept longer than ninety days a lease fee will be charged at one and one-half per cent per month. It is not dated nor is it signed. McKnight testified that this instrument was given by Somers to McKnight who is requested by Somers to sign it but McKnight refused to sign. Jones testified that he had not seen this exhibit. Further, Jones testified that he had pipe cutting tools. It is not necessary to determine whether pipe cutting tools are hand tools. The Plaintiff failed to sustain the burden of proof that the Defendant had pipe cutting tools borrowed from the Plaintiff which should be returned to the Plaintiff.

Therefore, the Court must conclude that there can be no Order requiring Defendant to return to Plaintiff pipe cutting tools.

## HAND LADLE AND CARRIER 150# SIZE

Plaintiff claims that additional ladles had been picked up by workmen when transporting a second muller to Kentucky; that this was duplicative and that it is only the second hand ladle that Plaintiff alleges to be subject to "lease". A hand ladle and carriers is included in what Defendant claims to be miscellaneous hand tools and is one of the six items mentioned in previous comments about pipe cutting tools. The bill of sale lists hand ladles.

Jones testified that a hand ladle and carrier 150 were taken from Dayton to Ken-

tucky. Although Somers had testified that the ladle and carrier were merely loaned from all of the testimony and the evidence the Court must conclude that the Plaintiff failed to sustain the burden of proving that the Defendant has any ladle other than that in the bill of sale. As a result no Order can be made that the Defendant should return to the Plaintiff this item of hand ladle and carrier.

### `CHART RECORDER, PYROMETER, AND BOTTOM BOARDS

There remain for consideration of items on Plaintiff's Exhibit 6 just three, to wit: Leeds and Northrup chart recorder and pouring stand for CE determination. Electro-nite immersion pyrometer, and bottom boards for flasks. These will be considered together.

Previous comment has been made in regard to contention of the Defendant in its brief at page six that the six items listed were miscellaneous hand tools. Among those six items are chart recorder, pouring stand and pyrometer.

McKnight testified that all of these could be carried by hand. There are many things that can be carried by hand, but just because they can be so carried cannot be considered miscellaneous hand tools. Jones even testified that he considered the flasks and jackets to be hand tools.

The Defendant admits that all of these items were at the Defendant's location on January 13, 1983 when the bill of sale was executed. The Defendant claims the items are necessary for the operation of the foundry business. The bill of sale was prepared by the attorney for the Defendant. If these items were considered to be those among the items purchased they should have been set out in the bill of sale.

The Defendant in its brief and listing what are claimed to be hand tools at page six includes flasks and jackets which are not on the list on page eight. On page eight is an item bottom boards for flasks which is not included in the list on page six of the brief of the Defendant. The testimony on behalf of the Defendant attempted to bring under the "umbrella" of hand tools as many items as possible.

Somers testified that the chart recorder was only loaned. Jones testified it tells how much silicon and carbon are in the iron; that he considered this to be a hand tool.

Somers testified that the pyrometer had a value of $500.00 to $600.00 and that it was at the Kentucky location on January 13th, the date of the bill of sale. Jones testified that it is used to test how hot the iron is.

As to the bottom boards Jones testified these were taken to Kentucky within a three month period and that he considered these to be hand tools.

The uses to which put and the values of these items must be taken into consideration.

█ Without going into anymore detail in regard to the testimony and considering all of the testimony and the evidence the Court is satisfied that the chart recorder and pouring stand, the pyrometer and the bottom boards are property of the Plaintiff and that the Defendant should return these to the Plaintiff.

### LEASE

Before proceeding further in this opinion a general comment should be made that applies not only to the lease, but to other matters.

The Court recognizes that because of the financial condition of the Plaintiff that he sought relief in this Court. Being unable to continue operations as previously the Plaintiff still wanted to stay in business and in order to do this entered into negotiations with the Defendant to do work for the Plaintiff. The Defendant obviously thought that it could establish a business which would be benefited by the negotiations with the Plaintiff which have led to the issues in dispute in this case. Under these circumstances neither party exercised due care in business arrangements. For men who were experienced in business

matters there was a complete failure to put into writing matters that should have been and which have resulted in the disputes between these parties. The disputes in regard to most of the items listed in Plaintiff's Exhibit 6 could have been avoided if there had been written agreements between these parties. This applies also to the matter of the lease.

There was no written lease as such. But there obviously was agreement as to some things which agreement can be considered an oral lease. Regardless of what this agreement might be called the difficulty is ascertaining what was included in such agreement. The Defendant claims there were items sold other than the items in the bill of sale. The Plaintiff claims that nothing was sold except what is in the bill of sale; that items in dispute not in the bill of sale were either leased by the Plaintiff to the Defendant or loaned to the Defendant.

Somers testified that some equipment was taken to Kentucky on loan to be examined by the Defendant and later leased at one and one-half percent of the value the amount of which was to be later determined and that it was in August of 1982 that there was a first request for a lease payment; that the time given the Defendant to decide whether to buy or lease was within ninety days prior to January 13, 1983 and that the charge for rental was invoiced to the Defendant.

McKnight testified that March 9, 1983 was the first that he became aware of a claim of the Plaintiff that it had a lease.

Jones testified he never consented to any rental charges. This is not consistent with the letter from Jones to Somers dated March 31, 1983 in which Jones specifically refers to leased equipment on the premises of the Defendant which belonged to the Plaintiff and that as of the date of the letter it was not the intent of the Defendant to purchase the equipment valued at $14,000.00 of which Defendant was paying one and one-half percent per month for *lease*.

At the time of the date of the letter which is Plaintiff's Exhibit 3 it was obvious that the Defendant was claiming the Plaintiff owed it money the balance of which was sixty days past due. The letter further stated the equipment in question could not be removed until the balance was paid and that after forty-five days from the date of the letter the leased equipment and patterns left would become the property of the Defendant and treated as such if the balance is not paid in full by that time.

It is important to note that this letter refers to a lease and to leased equipment. The wording would indicate that the patterns were not considered leased equipment. If not leased they can be considered as on loan.

It is obvious without the necessity of citation of law or cases that the Defendant could not take title to the leased equipment and patterns just by making that statement in the March 31st letter from Jones and Somers.

In his brief the Defendant contends that it was not until invoices accumulated to approximately $4,081.86 in March of 1983 that Somers first attempted to initiate the lease concept. The brief further states that on about March 7, 1983 Somers went to the Defendant and attempted to secure the signatures of Jones or McKnight on a document which claims seven or eight items had been loaned to the Defendant; that neither Jones nor McKnight executed the document and disagreed with the lease concept as both were of the opinion that they had purchased the property and acquired ownership. The brief is not specific but it is assumed that this document to which reference is made is Defendant's Exhibit 19. This exhibit contains no heading except "To: Cumberland Valley Foundry". It lists eight items loaned to Defendant, the property of the Plaintiff, returnable on demand and if kept longer than ninety days a lease fee will be charged at one and one-half percent per month. However, it is not signed nor is it dated. This contention of the Defendant is not supported by the evidence. On the contrary Plaintiff's Exhibit 3 of the March 31, 1983 letter from Jones to Somers clearly indicates that the De-

fendant had considered that there was a lease.

■ The Defendant contends there is no evidence of any lease entered into during the fall of 1982 and that there is no evidence of any demand having been made prior to the complaint being filed demanding the return of the equipment. In the opinion of the Court there is no question that there was a lease. The question is when such an oral agreement was made. The contention of the Defendant that no request for return of the equipment was made prior to the filing of the complaint is incorrect. Plaintiff's Exhibit 7 which is a letter to Jones from the attorney for the Plaintiff dated June 1, 1983 it was stated that if the rent is not paid or the equipment returned, application would be made to the Court for a turn-over Order. While commenting upon this Plaintiff's Exhibit 7 it should be added that the letter making effective immediately rental of $630.00 per month beginning June 1, 1983 cannot be considered as establishing that amount of rent per month. It is self-serving. It purports to set that amount of rent if the equipment is not returned. The question still remained as to the dispute as to what equipment was property of the Plaintiff and should be returned and what property the Defendant would not have to return. The Court finds that under such circumstances the mere raising of the rent by a letter cannot be considered, in and of itself, as binding. It can be considered only as a charge being made by the Plaintiff for increased rental.

The Plaintiff contends that the rental began approximately ninety days after the October 1983 agreement; that the Defendant would either purchase the remainder of the equipment or lease it at one and one-half per cent per month on a $14,000.00 valuation and that this is substantiated by Exhibits 4 and 5, the ledger cards, and the lining of the cards by both parties. Such Exhibits cannot, by themselves, be considered evidence of any date of agreement of rental or that there was an agreement. The only thing made clear by the lining in the ledger cards is that the balance set out at the time of the lining was agreed by both parties to be a correct balance. The initials at the lining are the initials of both a representative of the Plaintiff and a representative of the Defendant. The one definite piece of evidence is Exhibit 3 which indicates that the lease agreement had to be entered into prior to March 31, 1983.

The testimony in regard to the lease was conflicting.

Wilma Somers is the wife of Jack Somers. She is Secretary-Treasurer of Plaintiff. She testified that the lease payments started in September of 1982 at $230.03 a month. This is the amount charged as set out at seven different places on Plaintiff's Exhibit 4. But this ledger card had the first entry of this amount as of January 15, 1983. However, Mrs. Somers had testified that this lease for the Ford pick-up truck was included in a charge made also for the use of a Mustang; that the total amount for the two was $445.00. On Plaintiff's Exhibit 4 there are four different entries for this amount. The first of these was September 20, 1982. The evidence indicates and the testimony clearly showed that this Mustang was used by Mr. Somers. Defendant tried to get Mrs. Somers to explain why a charge should be made to the Defendant for the use of a Mustang in the name of the Plaintiff and used by the President of the Plaintiff. At this point it should be emphasized that the Court does not consider in dispute or at issue any of the entries made on Plaintiff's Exhibits 4 and 5 above the so-called red lines (which are in blue) drawn across these exhibits. Both parties had agreed on the balances as of the time the lines were drawn. Both parties consumed entirely too much time-wasted time-in introducing testimony concerning matters involved in transactions pertaining to the entries of amounts made above these lines. It is the matters involving the entries made below these lines that are important. Nevertheless, the very fact that the Defendant agreed to the matters entered above the line drawn across Exhibit 4 clearly indicates that it was not disput-

ing the charges of $230.03 a month for the rental of the pick-up truck and the $210.00 a month charge for rental of equipment which amount is entered on Plaintiff's Exhibit 4 under date of February 15, 1983.

The Ford pick-up truck was returned by the Defendant to the Plaintiff in accordance with an agreed Court Order of September 12, 1983. The testimony indicated that this was returned on September 15, 1983. The Court finds that the charges made by the Plaintiff for this $230.03 a month were proper charges down to and including this entry of September 15, 1983.

Trying to ascertain the claims and cross claims of these parties was made more difficult by the unbusinesslike manner in which they handled the transactions between themselves.

For example, Mrs. Somers testified that there were no entries on the accounts showing checks passing hands; that this was because they considered when what amount each owed the other balanced out no checks were written. Another questionable practice on the part of the Plaintiff was indicated by the testimony of Mrs. Somers that in regard to monthly payments there were no separate invoices for each month; that there was just the first invoice in regard to the first payment due but that after that charges for monthly rental were merely made by entering on the accounting card. An example of this is Defendant's Exhibit 3 dated September 20, 1982 for the $445.00 charge as entered on Plaintiff's Exhibit 4 under the same date. Another example is Defendant's Exhibit 4 at $1,200.00 invoice for monthly lease payment dated September 20, 1982. This was for rent payment on the furnace. An entry for this amount was made under the same date of September 20, 1982 on Plaintiff's Exhibit 4. But these were also examples of exhibits introduced and time taken for testimony in regard to such exhibits when they all pertained to entries made above the lines drawn across the Exhibits 4 and 5 of the Plaintiff and which were not even at issue in the trial because of the agreement indicated by the line drawn across the exhibits.

Before proceeding further in regard to rental on the equipment it is necessary to first comment upon the first item under "the line" on Plaintiff's Exhibit 4. It is dated April 15, 1983. The amount is $880.06. The testimony clearly showed that this was charge which included two months for rental of the equipment and two months rental for the pick-up truck. $460.06 would be for the truck and $420.00 for rental of equipment.

We now make the following findings in regard to the rental on the equipment. The value of the equipment which the Defendant retained and should have returned to the Plaintiff is set at $14,000.00 with the charge being made at the rate of one and one-half percent or $210.00 a month. This amount entered on Plaintiff's Exhibit 4 under the date of February 15, 1983 was above the line at which point agreement had been reached. It is the amount in Defendant's Exhibit 18. This $210.00 amount is a maximum that can be charged the Defendant. The $630.00 charges are improper. As previously indicated, the larger amount cannot be considered a proper charge just because of the letter sent the Defendant by the Plaintiff.

The next question is for what period of time these rental charges can be considered proper. The Defendant denies that there was any lease. There was a valid dispute between the parties. Having found in favor of the Plaintiff that there was a lease, we, nevertheless, conclude that the Plaintiff is entitled to lease payments only through the month of July, 1983, the complaint having been filed July 25, 1983.

As to proper charges below "the line" the proper rental for the Ford truck is $1,610.21. For rental of equipment the amount is $1,050.00.

CLAIMS AND COUNTERCLAIMS

The prayer of the complaint filed by the Plaintiff is for a Court Order to the Defendant to turn over to the Plaintiff equip-

ment and patterns, for the determination of rental obligations, for attorney fees and for an Order that the equipment and motor vehicles be delivered to Plaintiff's place of business in Dayton, Ohio.

This decision has already made findings in regard to the turnover of the equipment and patterns and also in regard to the rental obligation. As to attorney fees the Court finds that each party should be required to pay only the fees of its own attorney.

As to the delivery of the equipment and the motor vehicles to the Plaintiff's place of business in Dayton the matter of motor vehicles is now moot and as to the equipment the Court finds that the Defendant must return to the Plaintiff's place of business in Dayton the equipment and patterns which the Court has herein found should be returned to the Plaintiff.

Although a finding has been made in regard to the lease and the rent that matter must be further explored because of cross-claims of the Defendant.

The prayer of the Defendant in its Answer Counterclaim And Third Party Complaint includes request for Judgment for $14,468.00. This is one-half of the amount set out in paragraph ten of said pleading. In paragraph nine it is alleged that as a part of the sale transaction the Plaintiff and Somers agreed to pay Defendant one-half of the expenses and cost incurred in moving, establishing incorporating, operating and insuring the new furnace until the outstanding obligation on the furnace due the First National Bank of Dayton was paid in full. There was no written agreement as to this matter. The testimony and evidence did not support this claim of the Defendant. It should be noted that at no place in the Brief of the Defendant is this matter even mentioned. Whether this is because the Defendant realized it could not prove such allegation and, therefore, elected not to pursue the matter further is something of which the Court is not certain. In any event, finding is HEREBY made against the Defendant in regard to this Counterclaim.

In addition, the prayer of the Defendant seeks Judgment for $4,081.86 plus interest and costs for work, goods, materials and services provided Plaintiff. This brought into question the matter of set-off by the Plaintiff for the amount of rental due the Plaintiff. But whether the amount claimed by the Defendant as due is correct it is complicated by disputes as to the amounts which disputes included claims by the Plaintiff that certain work done by the Defendant for the Plaintiff was rejected by the customers. We now make comments as to these matters.

■ It should first be made clear that no findings are made in favor of either party as to interest and costs. Previous comment has been made as to the lack of a businesslike manner in which these negotiations were handled. Each party is at fault in creating the situation which has led to this Adversary Proceeding. Neither party is entitled to interest on any Judgment granted. Nor is either party entitled to Judgment for costs.

Attached to the Defendant's pleading are copies of five invoices the total of which is the $4,081.86 for which Judgment is claimed. The first four of these invoices are the same as the Defendant's Exhibit Number 1. The fifth invoice 1006 is not a part of Defendant's Exhibit 1. This invoice has a written notation "rejected" as to the first item in the amount of $68.40. That credit was given for this item is verified by the invoice 1007 attached to Defendant's Exhibit 2. Thus, it is obvious that even at the time the Defendant filed its counterclaim the amount due was $68.40 less than the amount prayed for. It should be noted that this invoice 1006 was also Plaintiff's Exhibit Number 12.

While on the subject of Defendant's Exhibit 2 we deem it appropriate at this time to make comments about the five sheets attached to Defendant's Exhibit 2 pertaining to Detroit Stoker Company. These all involve rejections by this company. The first pertains to thirteen jump plates. This is the same item as mentioned in Plaintiff's

Exhibit 13. In one of the Court hearings in this case a dispute arose as to whether there were rejections by Stoker. In order to avoid further delay and trouble and further because of necessity of discovery proceedings the Court took it upon itself to write Stoker on February 15, 1984 and received an answer which by agreement was made a part of the record on March 19, 1984. Because it was made a part of the record it is deemed necessary to go into detail in regard to these portions of Defendant's Exhibit 2. At page five of the Brief of the Plaintiff it stated that it had ascertained that Detroit Stoker was not insisting upon this amount and that it should not be charged back and the sum, $1,068.00, should be deleted from the set-offs and the amount due the Plaintiff reduced accordingly. Plaintiff's Exhibit 5 reveals the entry of this item of $1,068.00 under the date of April 13, 1983.

While on the subject of the Stoker rejections and the Defendant's Exhibit 2 this Exhibit first has a copy of invoice Number 1003 for $1,680.80. This is reflected in Plaintiff's Exhibit 5 on the November 5th entry. The second sheet of Defendant's Exhibit 2 is invoice 1001 for $294.00. This is reflected in Plaintiff's Exhibit 5 under entries dated October 12th and October 22nd.

While on the subject of Plaintiff's Exhibit 5 we merely call attention to the last six entries made above the line drawn across the accounting card. These all pertain to the invoices previously mentioned in connection with the invoices attached to the Defendant's counter complaint.

No other comment is needed in regard to Plaintiff's Exhibit 5 because the evidence and the testimony was clear that the balance of $5,314.92 which is initialed was a balance agreed upon at that time.

In regard to Plaintiff's Exhibit 4 the testimony and the evidence was clear that there was agreement as to the balance of $3,334.28 on the line initialed just above the line marked across the accounting card.

There were questions asked and answers given at the various hearings in this case that do not justify comment because they involve charges and credits entered above the initialed lines in both Plaintiff's Exhibit 4 and Plaintiff's Exhibit 5. For example, Mrs. Somers was asked questions about invoices 1003 and 1001 in Defendant's Exhibit 2. But both of these Exhibits involved entries that were made, as previously pointed out, above the line which marked agreement as to the balance due at that time.

In Plaintiff's Exhibit 5 there are two items entered below the line drawn across the ledger sheet. The amount of $699.40 having been entered by the Plaintiff on its own books is accepted as proper and after the credit of $1,068.00 previously mentioned leaves the balance of $4,946.32 which the Court finds to be a correct balance.

There was even more confusion in regard to the 1982 Ford pick-up truck leased from Stenger Ford. This and a 1966 Ford Stake Truck were among the items released by the Defendant to Plaintiff by an Agreed Order of September 12, 1983. There was never any written agreement in evidence as to the lease of any vehicle. The Plaintiff had been paying lease rental to Stengers Ford for this vehicle. Defendant had the use until it was towed back from Kentucky. The Plaintiff claimed that the transmission had been ruined and its Exhibit 14 indicates paid to Stengers a repair bill of $166.92. Mrs. Somers testified that the expense of gaining possession of the truck was $189.00 paid to Stengers, $100.00 for labor and $40.00 for gas which makes a total of $329.00. Plaintiff's Brief lists the total as $264.00. The Court finds that the Defendant did have the use of this vehicle and should be required to reimburse the Plaintiff for this $264.00 amount in regard to which the Plaintiff certainly sustained the burden of proof.

The Plaintiff failed to sustain the burden of proof that it was entitled to payment for the last four items on Plaintiff's Exhibit 4, each of which was for $495.00. Somers testified that the last three of these were just "recently" added to the card; that

they were for rental of leased equipment that still remained on the premises of the Defendant. It was never satisfactorily explained why the difference between the $230.03 charges and the $630.00 charges or that it was for anything other than for what had been charged above on the card. And no explanation was given why mention was made of the last three items, but nothing explained as to the connection between the last three items and the October 15, 1983 item of the same amount. If these were for lease payments they are beyond the period for which such charges can be made by the Plaintiff, as previously found by this Opinion.

Plaintiff's Exhibit 11 has nothing to do with claims of parties as to amounts due. It was introduced by the Plaintiff for the purpose of showing that Plaintiff had good reason to take action against the Defendant. The exhibit is a Foundry magazine. At page sixty (60) is an advertisement for sale. The Plaintiff was concerned that the property being put up for sale included property of the Plaintiff.

## SUMMARIZING

IT IS THE JUDGMENT OF THIS COURT that Defendant must return to the Plaintiff at its place of business in Dayton, Ohio the equipment as indicated in this opinion should be returned to wit:

CLEARFIELD SAND MULLER, CLARK 400 FORK TRUCK, the larger of the two BATCH MIXERS FOR CORES, BACK CHASSIS RAIL FOR TRUCK (if Defendant has it), CORE BLOWER UNIT (YELLOW) B AND P, ONE SQUEEZER MACHINE, SQUEEZER FLASKS AND JACKETS (10 x 20–12 x 24–13 sq. 16 sq.; 14 x 19–13 x 21–14 sq.—plus others), LARGE FLASKS AND JACKETS–ALL STEEL FLASKS 40 x 40 ETC.–POURING JACKETS–SLIP FLASKS, and CHART RECORDER, PYROMETER, AND BOTTOM BOARDS.

FURTHER, JUDGMENT IS HEREBY rendered in favor of the Plaintiff in the amount of $1,312.17. This amount is based upon the following computation: Start with the agreed balance due as stated on Plaintiff's Exhibit 4 in the amount of $3,334.28 and add to this the truck rental of $1,610.21 plus rental of equipment of $1,050.00, plus the $264.00 item pertaining to the vehicle rented from Stenger Ford gives a total of $6,258.49. Deduct from this amount the $4,946.32 balance on Plaintiff's Exhibit 5 results in the amount of $1,312.17.