**In re WISCONSIN BARGE LINE, INC., et al, Debtors.**

**WISCONSIN BARGE LINE, INC., Plaintiff,**

**v.**

**SLAY WAREHOUSING COMPANY, INC., Defendant.**

Bankruptcy No. 86–00016(SE).
Adv. No. 86–0023(SE).

United States Bankruptcy Court,
E.D. Missouri,
Southeastern Division.

Sept. 5, 1986.

Gregory D. Willard, Carl J. Spector, St. Louis, Mo., for debtor/plaintiff.

Gerald J. Zafft, Larry A. Reed, St. Louis, Mo., for defendant.

Barry S. Schermer, Clayton, Mo., for Creditors' Committee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### INTRODUCTION

The subject matter of this proceeding is the Debtor barge line's Complaint against its former fleeter for turnover of rigging and other equipment which had been used in fleeting Debtor's barges. For the reasons set forth below, the Court will this date enter an order granting judgment for Debtor.

### PROCEDURAL HISTORY

On January 13, 1986, Wisconsin Barge Line, Inc. ("WBL") filed its voluntary Chapter 11 petition. Since that date WBL has operated its maritime business as debtor in possession. At the time of its bankruptcy, WBL and Slay Warehousing Company, Inc. ("Slay") were parties to a contract under which Slay provided WBL certain mooring areas and related fleeting and switch boat services in the St. Louis harbor. On January 31, 1986, WBL moved to reject its contract with Slay. On March 4, 1986, the Court granted WBL's motion. After the Court's order authorizing rejection of WBL's contract with Slay, WBL requested Slay return certain rigging and equipment which WBL had provided to Slay in conjunction with the contract. Slay refused to turn over the rigging and equipment to WBL and on March 24, 1986, WBL filed the instant action to compel turnover of the rigging and equipment. On March 26, 1986, Slay filed its Answer, disputing WBL's ownership rights in the rigging and equipment.

On March 31, 1986, the Court held a preliminary hearing on the matter. Pursuant to a stipulation entered into by the parties, on April 1, 1986, the Court entered an order stating that the property in dispute was 450 rigging units and two sets of equipment. The order defined a rigging unit as one 35' wire, one ratchet and one chain strap with a unit value of $94.50 and defined a set of equipment as 50 pins and shackels and 50 six link chains with a set value of $22.50. The total value of the rigging and equipment in dispute is $42,570.00. The Court's April 1, 1986 order also required Slay to deliver 200 rigging units and one set of equipment to WBL pending a hearing on May 5, 1986. On May 5, 1986, at the request of Slay, the hearing was continued to June 20, 1986. On May 8, 1986, an order was entered requiring Slay to turn over an additional 75 rigging units to WBL pending conclusion of a final hearing and providing that should Slay not prevail at the final hearing, Slay turn over to WBL within five business days of the entry of this Court's final order 175 rigging units and an additional set of equipment or their equivalent in cash, $16,560.00. On June 20, 1986, the Court held a final evidentiary hearing on this matter, at which time the only issue before the Court was the ownership of the rigging and equipment.

### BACKGROUND

WBL and Slay had entered into a contract dated August 1, 1978, pursuant to which Slay was to provide certain barge fleeting and switching services for WBL within the confines of the St. Louis harbor. The agreement was for a term of five years, commencing June 1, 1978, subject to renewal by Slay for two successive five year periods.

Although the use and availability of rigging and equipment are essential in the fleeting of barges, the agreement does not mention rigging, but is completely silent on

the subject of who is to provide rigging, who is responsible for it, and how any lost or damaged rigging is to be replaced. Initially, however, WBL provided all rigging required for the mooring and fleeting of its barges by Slay.

In the initial years covered by the contract, Slay refused to assume responsibility for the rigging. WBL found this situation unsatisfactory and at its behest, the contract was amended on March 6, 1984. By the terms of the amendment, Slay was to account for the rigging and equipment on the condition that WBL at its own expense provide 500 rigging units and two sets of equipment for use by Slay in the fleeting of WBL barges in the St. Louis harbor.

The terms of the amendment specifically refer to the rigging, which includes the equipment, as "WBL rigging". Although WBL granted Slay a replacement allowance in the WBL rigging and equipment of up to 20 percent per annum for breakage, shrinkage or droppage, the replacement cost of any sets lost in excess of the allowance were to be borne by Slay. Michael Hayo, WBL's Vice President and Chief Financial Officer, testified that the intent of the amendment was to transfer responsibility for accounting of the rigging and equipment to Slay and that WBL never granted an ownership interest in and to the rigging and equipment to Slay. Given the language of the initial contract and its amendment and the fact that WBL initially paid for the riggings and equipment, the Court finds Hayo's testimony credible. The Court, therefore, concludes that notwithstanding Slay's possession of the rigging and equipment, the same was and still is owned by WBL.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(E), which the Court may hear and determine.

## DISCUSSION

■ Under section 542(a) of the Bankruptcy Code, an entity in possession, custody or control of property that the debtor in possession may use, sell or lease, is required to deliver that property or its cash equivalent to the debtor in possession. Although the burden is on the debtor to show property is part of the bankruptcy estate, *In re Weiss-Wolf, Inc.*, 60 B.R. 969, 975 (Bankr.S.D.N.Y.1986), WBL has sustained its burden of proof by submitting evidence of its ownership of the rigging and equipment. Slay has not refuted WBL's ownership, nor has it introduced any credible evidence that a transfer of ownership interest to Slay ever occurred. Where, as here, property merely has been entrusted by a debtor to another party to facilitate the handling of debtor's business, such property remains property of the estate and is subject to the turnover provision of section 542. *Matter of Kramer Brothers Foundry*, 47 B.R. 682 (Bankr.S.D.Ohio 1985).[1]

An order consistent with this Opinion will be entered this date.

■

---

1. An exception to the turnover requirement of section 542 is if the property is of inconsequential value or benefit to the estate. That exception is not applicable here since the rigging and equipment is worth in excess of $40,000.00.